# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ARTIE HORTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> Acting Commissioner of Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:17-CV-2897 JAR |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Artie Horton's ("Horton") application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

### I. Background

Horton applied for disability insurance benefits on August 11, 2014, alleging disability as of June 14, 2014, due to gastroesophageal reflux disease (GERD)/Barrett's esophagus, hiatal hernia, right eye blindness, learning disorder, and marijuana use disorder. After his application was denied at the initial administrative level, he requested a hearing before an administrative law judge ("ALJ"). Following a hearing on January 11, 2017, the ALJ issued a written decision on March 13, 2017, denying his application. Horton's request for review by the Appeals Council was denied. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

### II. Facts

The Court adopts Horton's Statement of Facts (Doc. No. 17-1).[1] The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

---

[1] Defendant has admitted all of Horton's facts including ¶ 8, ¶ 21, ¶ 22, ¶ 25, and ¶ 27 with clarification. (Doc. No. 22-1).

2

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

3

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Disability claims based on mental disorders are evaluated in essentially the same manner as claims based on physical impairments. If the mental impairment is severe, the ALJ must determine whether it meets or equals any of the Listings. The Listings of mental impairments consist of three sets of "criteria"- the Paragraph A criteria (a set of medical findings), Paragraph B criteria (a set of impairment-related functional limitations), and paragraph C criteria (additional functional criteria applicable to certain Listings). The Paragraph A criteria medically substantiate the presence of a particular mental disorder. The Paragraphs B and C criteria describe the impairment-related functional limitations that are incompatible with the ability to perform SGA.

There are four areas in which the ALJ rates the degree of functional limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation (the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3). A claimant can satisfy the Paragraph C criteria by showing: (1) extended episodes of decompensation; (2) a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or (3) a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). The Paragraph C criteria are assessed only if the Paragraph B criteria are not satisfied. If the claimant satisfies the A and B, or A and C criteria, he will be

4

considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); see also 20 C.F.R. 404.1520a (detailing evaluation of mental impairments).

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if he cannot, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

5

## IV. Decision of the ALJ

The ALJ found Horton had the severe impairments of GERD/Barratt's esophagus, hiatal hernia, right eye blindness, learning disorder and marijuana use disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15). In making this determination, the ALJ found Horton's impairments did not satisfy the criteria of any functional limitation under Paragraph B. (Id.). Specifically, Horton has only mild limitations in activities of daily living and is otherwise able to manage all activities. (Id.). The ALJ further noted that no treating, reviewing, or examining medical source had opined that Horton is disabled or cannot work. (Tr. 18).

After considering the entire record, the ALJ determined that Horton had the residual functional capacity ("RFC") to perform a range of medium work with the following limitations: he can lift, carry, push or pull 50 pounds occasionally, and 25 pounds frequently; may sit for six hours in an eight-hour workday; may stand or walk for six hours in an eight-hour workday; may only occasionally climb ropes, ladders or scaffolds; may only have occasional exposure to unprotected heights or hazardous machinery; may not perform work which requires peripheral vision on the right side; is able to understand, remember, and perform complex tasks; must not be required to read or write complex written material. (Id.) The ALJ found Horton capable of performing his past work as an automobile mechanic as actually and generally performed. (Tr. 18-19). Additionally, the ALJ found Horton capable of performing other work that exists in the national economy, which does not require the performance of work-related activities precluded by his RFC. Thus, the ALJ found Horton was not disabled as defined by the Act. (Tr. 19).

## V. Discussion

6

In his appeal of the Commissioner's decision, Horton first argues that the ALJ failed to point to medical evidence to support the finding of RFC. (Doc. No. 17-1 at 5-20). In determining whether the ALJ properly considered the medical opinion evidence, the court's role is limited to reviewing whether substantial evidence supports this determination and not to decide whether the evidence supports the claimant's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010); Brown v. Colvin, No. 4:13CV01693 SPM, 2014 WL 2894937, at *5 (E.D. Mo. June 26, 2014).

Some medical evidence must support the determination of the claimant's RFC. Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (*per curiam*); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). RFC is a medical question; therefore, the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace. Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter , 902 F. Supp.2d at 1229 (citations omitted). Upon review of the record, the Court finds that the ALJ properly considered medical evidence in the RFC determination.

The ALJ properly evaluated the medical opinion evidence in considering the opinions of Horton's treating physicians. Dr. Craig Holzem opined that Horton was doing well after switching Horton's medication from Zantac to Dexilant. (Tr. 13). Dr. Holzem gave Horton a coupon to allow Horton to continue receiving Dexilant after his insurance stopped covering the drug. (Id.). Dr. Holzem also noted that CT scans revealed no acute intestinal inflammation or obstruction, no lymphadenopathy, and normal renal collecting systems. (Id.). Horton was told to follow up as needed after his November 21, 2012 visit and did not return until April 18, 2013. (Id.). Horton made no reports of vomiting to Dr. Holzem at either his August 21, 2012 or April 18, 2013 visits. (Id.). Horton later visited Dr. Leslie Tucker on June 7, 2013 after a GI

7

endoscopy. (Tr. 13). Dr. Tucker opined that Horton's GERD was fairly well controlled, with no findings of cell metaplasia or evidence of malignancy. (Id.). Horton then saw Dr. Leung on February 7, 2015. (Id.). Dr. Raymond Leung found no oral pharyngeal lesions. Dr. Leung noted that Horton showed a full range of motion at shoulders and lumbar spine with a decreased range of motion in the cervical spine. (Tr. 14).

Dr. Fred Williams examined Horton on March 9, 2015 and noted that Horton's description of his nausea and vomiting was inconsistent and changed throughout the appointment. (Tr. 14, 357). Dr. Williams believed that the chronic nausea and vomiting could be the result of heavy marijuana use and advised Horton to stop. (Tr. 14). Horton's upper endoscopy showed ulcerative esophagitis and multiple superficial ulcers, but no bleeding. (Id.). A second endoscopy on May 11, 2015 showed no evidence of ongoing reflux esophagitis. (Id.). The endoscopy revealed a normal stomach and duodenum and resolution of esophagitis. (Id.). Horton later reported continued marijuana use and throat pain due to Barret's esophagitis to Dr. Williams on August 10, 2015. (Id.). Dr. Williams again advised Horton that his heavy use of marijuana may be worsening his overall condition. (Tr. 14). Nevertheless, when Horton visited Dr. Williams again on September 21, 2016, he reported ongoing marijuana use. (Id.).

Furthermore, the ALJ properly evaluated the medical opinion evidence in considering the opinion of consulting physician, Dr. Paul Rexroat. Dr. Rexroat opined that Horton could understand and remember simple instructions, sustain concentration and persistence with simple tasks, interact socially and had only mild limitations adapting to his environment. (Tr. 346). He diagnosed Horton with specific learning disorder with impairments in reading and writing. (Tr. 347). The ALJ properly gave little weight to Dr. Rexroat's opinion because his opinion appeared largely based on Horton's subjective allegations. (Tr. 18). See Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (concluding the ALJ properly discounted a

8

doctor's report, in part, because it "cited only limitations based on [the claimant's] subjective complaints, not his own objective findings."). In any event, Horton left work due to his esophagitis, not the inability to do complex tasks. (Tr. 18, 362). Moreover, Horton had been able to perform complex tasks related to work for thirty-three years as an automobile mechanic prior to claiming disability. (Tr. 180).

The ALJ also evaluated the medical evidence surrounding the opinion of state agency psychological consultant, Dr. Robert Cottone. Dr. Cottone opined that Horton had no medically determinable psychiatric impairment. (Tr. 58). The ALJ properly gave little to no weight to Dr. Cottone's opinion because it was inconsistent with Horton's diagnosed learning impairment. (Tr. 15, 18, 347). See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) ("The opinion of a consulting physician, who examines a claimant once, or not at all, generally receives very little weight."). Still, the ALJ determined that the effects of Horton's learning impairment were accounted for in his RFC. (Id.) The ALJ also considered the third-party statements of Horton's mother and sister and properly assigned them little weight as they are based on Horton's subjective complaints and appear inconsistent with the record. (Tr. 18).

The Court concludes that the ALJ evaluated all of the medical opinion evidence of record and adequately explained her reasons for the RFC determination given this evidence. When assessing a claimant's RFC, an ALJ need not credit the entirety of a medical opinion or directly correlate a medical opinion to the RFC. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). Instead, the ALJ must determine a claimant's RFC based on review of the record as a whole. For the reasons set out above, substantial evidence on the record as a whole supports the ALJ's RFC determination.

Additionally, Horton argues that the hypothetical question posed to the vocational expert was flawed. (Doc. No. 17-1 at 5-20) The Court disagrees. The hypothetical question posed to vocational expert Dr. Darryl Taylor was proper. The question was based on a valid RFC determination supported by substantial evidence on the record as a whole. RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The question posed to Dr. Taylor considered Horton's work as an automobile mechanic to be a skilled, specific vocational preparation level seven position listed in the DOT at 620.261-010 (Tr. 50). The ALJ considered the mental demands of Horton's past work. The ALJ's hypothetical assumed an individual that must not be required to read or write complex written material. (Tr. 19). This limitation is consistent with Horton's diagnosed learning impairment. (Tr. 51). For the reasons set out above, substantial evidence on the record as a whole supports the ALJ's hypothetical question to vocational expert Dr. Taylor. Because there was substantial evidence in the record to support the ALJ's RFC, the hypothetical question based on that RFC was not improper.

## V. Conclusion

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 22ND day of March, 2019.

/s/ John A. Ross
JOHN A. ROSS
**UNITED STATES DISTRICT JUDGE**